**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **SHANNON M. HISER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:08-0941** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered July 23, 2008 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 15.)

The Plaintiff, Shannon M. Hiser, (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on October 5, 2004 (protective filing date), alleging disability as of September 26, 2003, due to

> bilateral carpal tunnel syndrome, bipolar disorder, obsessive compulsive personality traits, anxiety induced by pain, spondylosis, dextroscoliosis, cervical spine has slight straightening of the normal lordosis, right C-6 uncinated hypertrophy, posterior osteophyte formations at C4-5 and C6 levels. Lumbar spine has a small sacral arachnoid at S1 level. I have degenerative disc disease at L4-5. I have disc bulging associated with annular tear at L3-4 and L4-5. I have a partial herniation at L5/S1. I

have sacroilitis and rotosacroilitis. I have vertigo. Small rotator cuff tear in right
shoulder.

(Tr. at 15, 57-58, 59, 71-72.) The claims were denied initially and upon reconsideration. (Tr. at 32-34,
37-39.) On January 4, 2006, Claimant requested a hearing before an Administrative Law Judge
(ALJ). (Tr. at 41.) The hearing was held on September 15, 2006, before the Honorable Mark A.
O'Hara. (Tr. at 505-60.) By decision dated December 12, 2006, the ALJ determined that Claimant
was not entitled to benefits. (Tr. at 15-29.) The ALJ's decision became the final decision of the
Commissioner on May 23, 2008, when the Appeals Council denied Claimant's request for review.
(Tr. at 5-9.) Claimant filed the present action seeking judicial review of the administrative decision
on July 23, 2008, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has
the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A
disability is defined as the "inability to engage in any substantial gainful activity by reason of any
medically determinable impairment which can be expected to last for a continuous period of not less
than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of
disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at
any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the
sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§
404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from
a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third
inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to
Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the
claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the

2

claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such

3

factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since September 26, 2003, the alleged onset date. (Tr. at 17, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from a back disorder, right shoulder pain, and a history of bilateral carpal tunnel syndrome, a combination of which were severe impairments. (Tr. at 18, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity to perform light level work, as follows:

> [C]laimant has the residual functional capacity to meet the demands of light work (lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday) that involves no climbing ladders, ropes or scaffolds, other postural movements occasionally (climb stairs or ramps, balance, stoop, kneel, crouch and crawl), occasional pushing and

5

pulling (subject to the previously indicated weight limits) and overhead reaching with her right upper extremity, no repetitive use of the wrists, and frequent, but not constant, handling and fingering activities.

(Tr. at 20, Finding No. 5.) At step four, the ALJ found in part on the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, that Claimant was capable of performing past relevant work as a paralegal, social service aide, and a receptionist, as Claimant actually performed the work and as the work is generally performed in the national economy. (Tr. at 28, Finding No. 6.) On this basis, benefits were denied. (Tr. at 29, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on September 23, 1973, and was 32 years old at the time of the

administrative hearing, September 15, 2006. (Tr. at 57, 511.) Claimant has a high school education and completed five college level courses. (Tr. at 81, 113, 512.) In the past, she worked as a paralegal/legal assistant, receptionist, house party gift sales person, cashier, notary public, social service aide, sales clerk, chamber maid/housekeeper, cocktail waitress, sewing machine operator, inspector/presser/packer, and bundle carrier. (Tr. at 28, 72-73, 104-11, 112-13, 114-15, 551-52.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in (1) not finding that Claimant's mental impairments and fibromyalgia were severe impairments; (2) evaluating Claimant's subjective complaints; (3) assessing Claimant's residual functional capacity ("RFC" when he failed to account for the combined effect of Claimant's physical and mental impairments, the side effects of her medications, improperly relied on the assessments of the state agency medical sources, and improperly rejected the opinion of Dr. Sams, Claimant's treating physician, that Claimant was disabled; (4) posing hypothetical questions to the VE when he failed to include any mental limitations and limitations due to side effects of Claimant's medications; and (5) not having a medical expert present at the administrative hearing. (Document No. 12 at 48-53, 57-58.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 15 at 9-20.)

1. Severe Impairments.

Claimant argues that the ALJ erred in not finding that her mental impairments and fibromyalgia were severe impairments. (Document No. 12 at 50-51.) Regarding Claimant's mental impairments, Claimant asserts that the medical records from Dr. Eitel at Seneca Mental Health, Juliet

7

Balfour at Willow Ridge, Dr. Debra C. Sams, Dr. John Collins, and Dr. Rhonda Hamm, evidence consistent reports of a depressed mood, tearful affect, anhedonia, sleep disturbance, decreased energy, appetite disturbance with changes in weight, crying spells with some decompensation, limited insight, and impaired judgment, as well as diagnoses of depression, bipolar disorder, and personality disorders. (Id. at 51.) With respect to her fibromyalgia, Claimant asserts that the ALJ improperly referred to an office note from Dr. Sams that there was insufficient evidence to support Claimant's surgery and that fibromyalgia was an incompensable injury in the claim. (Id. at 50.) Claimant notes however, that at that point, Dr. Sams had not diagnosed fibromyalgia. (Id.) Furthermore, Claimant asserts that the ALJ ignored the diagnoses of fibromyalgia by Dr. Brian Torre, a neurologist, and Dr. John Collins, her treating pain specialist and neurologist. (Id.)

Regarding Claimant's mental impairments, the Commissioner asserts that the medical evidence revealed that Claimant's psychiatrist at Willow Ridge rated her GAF score at 65, indicating only mild psychological symptoms or limitations, and that her treating psychiatrist, Dr. Hamm, opined that she was not disabled from a psychiatric viewpoint. (Document No. 15 at 10.) Two state agency psychologists reviewed Claimant's medical records and opined that Claimant also did not have any severe mental impairment. (Id.) The Commissioner therefore, asserts that Claimant did not have any mental impairments that would significantly limit her ability to do basic work activities and that the ALJ's decision is supported by substantial evidence of record. (Id.) Respecting her fibromyalgia, the Commissioner asserts that "the ALJ correctly pointed out that the diagnosis was doubtful because [Claimant's] treating physician, Dr. Sams believed a diagnosis of fibromyalgia was inconsistent with [Claimant's] positive response to Dr. Torre's carpal tunnel injections." (Id.) Though Dr. Sams later completed a form for the West Virginia Department of Health and Human Resources identifying fibromyalgia as one of Claimant's diagnoses, Dr. Sams did not identify any functional limitations resulting from the condition. (Id. at 10-11.) The Commissioner points out that Dr. Sams

8

noted Claimant was ready to begin vocational rehabilitation with the goal of returning to work. (Id. at 11.) Accordingly, the Commissioner asserts that even if Claimant correctly was diagnosed with fibromyalgia, there was no evidence indicating any functional limitations on her ability to perform basic work activities, and therefore, the ALJ's decision is supported by substantial evidence. (Id.)

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2006). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

A. Mental Impairments.

The medical evidence reveals that Claimant sought treatment at Senecca Health Services on May 12, 2004, and June 7, 2004, for complaints of depression, sleeplessness, crying spells, and anhedonia. (Tr. at 221-23.) Dr. Douglas Eitel, M.D., a psychiatrist, diagnosed major depressive

disorder, recurrent, moderate; and assessed a GAF of 55.[2] (Tr. at 223.) On June 14, 2004, Claimant's treating physician, Dr. Debra C. Sams, D.O., diagnosed major depressive disorder, anxiety disorder, and stress disorder. (Tr. at 314.) Claimant reported having received only eight hours of sleep in four days. (Id.) Dr. Sams decreased Claimant's Zoloft, discontinued the Gabitril, and prescribed Lamictal. (Id.)

Claimant underwent treatment at Willow Ridge from October 22, 2004, through June 16, 2005. (Tr. at 398-419.) Dr. Rhonda L. Hamm, M.S., D.O., completed her initial psychiatric evaluation, at which time she reported that Claimant was alert and oriented; her affect was slightly flat; she had a slightly labile mood, which was much improved from her initial visit; she had no suicidal or homicidal ideation; she exhibited fluent and goal directed speech; had clear thoughts; exhibited no evidence of perceptual disturbance, hallucinations, or delusions; attended well to conversation; had intact short and long term memory; was of average to above average intelligence, given her fund of information and verbal skills; had some insight into her difficulties; and her judgment was mildly impaired. (Tr. at 412.) Dr. Hamm noted that Claimant had done well with therapy and recommended that she continue with counseling. (Id.) Dr. Hamm diagnosed pain disorder with physical and psychological features, bipolar II disorder, rule out personality disorder, and assessed a GAF of 55. (Id.)

On February 24, 2005, Dr. Sams completed a form for the West Virginia State Department of Health and Human Resources on which she opined that Claimant was unable to work due to severe emotional labile disorder, major depressive disorder, and musculoskeletal problems. (Tr. at 18, 291.)

---

[2]    The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has some moderate symptoms or "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

Dr. Hamm, however, reported on April 22, 2005, that Claimant's mood was better and that from a psychiatric viewpoint, "she is not disabled [and] should be able to work [and] interact with others."[3] (Tr. at 18, 401.) Dr. Hamm assessed a GAF of 65,[4] which was indicative of only mild psychological symptoms. (Id.)

On March 31, 2005, Dr. Rosemary L. Smith, Psy.D., a state agency reviewing medical source, opined that Claimant's bipolar, pain, and personality disorders were non-severe impairments. (Tr. at 18, 274-86.) Dr. Smith further opined that these conditions resulted in no more than mild limitations in maintaining activities of daily living, social functioning, concentration, persistence, or pace, and resulted in no episodes of decompensation each of extended duration. (Tr. at 18, 284-85.) Dr. Smith stated that there was "no evidence of significant limitations due to a mental disorder." (Tr. at 18, 286.) Dr. Debra L. Lilly, Ph.D., also assessed on October 25, 2005, that Claimant had no severe mental impairment. (Tr. at 18, 428-40.)

In his decision, the ALJ determined that Claimant's depression and pain disorder resulted in no more than mild limitations in maintaining activities of daily living, social functioning, concentration, persistence, or pace. (Tr. at 18.) He summarized the medical evidence of record, including Claimant's testimony and self-reports and the opinion evidence, and adopted the assessments of Drs. Hamm, Smith, and Lilly because they were well supported by the overall evidentiary record. (Tr. at 18-19, 21-28.) The ALJ aptly noted that Claimant's treating psychiatrist, Dr. Hamm, opined that Claimant's mental impairments were non-disabling. (Tr. at 18.)

---

[3] Dr. Hamm also opined that Claimant was able to work from a psychiatric viewpoint on December 13, 2004, and January 18, 2005. (Tr. at 18, 409, 419.)

[4] A GAF of 61-70 indicates that the person has some mild symptoms or "some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

11

Consequently, the medical evidence fails to demonstrate any significant limitations on Claimant's ability to do basic work activities, and therefore, the undersigned finds that the ALJ's decision that Claimant's mental impairments were non-severe impairments is supported by substantial evidence.

      B. Fibromyalgia.

      Regarding Claimant's fibromyalgia, the medical evidence reveals that on October 20, 2003, Dr. Torre diagnosed possible fibromyalgia or myofascial pain syndrome, based upon Claimant's reported pain in her hands, shoulders, and neck. (Tr. at 228.) On November 26, 2003, Dr. Sams, Claimant's treating physician, opined: "I do feel that the patient does not have fibromyalgia." (Tr. at 329.) Dr. Sams noted that it was inconsistent with fibromyalgia to receive relief that quickly, and noted that not working made a tremendous improvement in her wrist. (Id.) She noted that Claimant needed rehabilitated for a different kind of work where she would not use her wrist joint as frequently. (Id.) On December 11, 2003, Dr. Sams noted that she did not "think the fibromyalgia is the main issue here." (Tr. at 328.) Though she received significant relief from the injections, which was consistent with fibromyalgia, Dr. Sams noted that anyone who has a chronic injury, will have some fibromyalgia symptoms. (Id.) On May 17, 2004, Dr. Sams again opined that she did not think that Claimant had fibromyalgia. (Tr. at 319.) On August 31, 2005, Dr. Sams however, indicated that Claimant was disabled due in part to "chronic pain syndrome/fibromyalgia." (Tr. at 493.)

      Despite Dr. Torre's diagnosis and Dr. Sams' limited diagnosis, as the Commissioner points out, neither Dr. Sams nor Dr. Torre identified any significant functional limitations resulting from her fibromyalgia. Consequently, even if Claimant suffered from fibromyalgia, there is no evidence of record indicating that the condition significantly limited her ability to perform basic work-like activities. Accordingly, the undersigned finds that substantial evidence supports the ALJ's finding that Claimant's fibromyalgia was not a severe impairment.

2. <u>Pain & Credibility</u>.

Claimant next argues that the ALJ did not evaluate her subjective complaints properly. (Document No. 12 at 48-50.) Claimant asserts that in assessing her credibility, the ALJ failed to resolve conflicts between her testimony and the other evidence of record. (<u>Id.</u> at 48.) She also asserts that the ALJ erred in reviewing "differing versions" of her December 22, 2004, motor vehicle accident. (<u>Id.</u>) Particularly, Claimant contends that she reported to Dr. Alan T. Lee at Greenbrier Valley Medical Center that she drank alcohol approximately three times per week. (<u>Id.</u> and Tr. at 256.) Dr. Craig Bookout then interpreted this pattern to be consistent with "binge drinking." (<u>Id.</u> and Tr. at 252.) Claimant further asserts that Drs. Lee and Bookout misinterpreted her past use of marijuana, and notes that laboratory reports indicated no signs of marijuana or other illicit drug use. (Document No. 12 at 49.) Consequently, Claimant contends that the ALJ improperly used these records to find that Claimant was not totally credible when she admitted to doctors that she used marijuana and had a history of frequent alcohol binges, despite her testimony to the contrary. (<u>Id.</u>)

The Commissioner asserts that the ALJ properly applied the regulations regarding the evaluation of Claimant's subjective complaints and resolved the conflicts between her testimony and the other evidence of record in finding that Claimant was not fully credible. (Document No. 15 at 11.) Specifically, the Commissioner notes that the ALJ emphasized that Claimant's "allegations of work-preclusive limitations were inconsistent with the objective medical evidence, which was consistent with the ability to perform a limited range of light work." (<u>Id.</u> at 12.) The ALJ noted that despite complaints of debilitating pain, her treatment was conservative, that her carpal tunnel syndrome [CTS] responded well to injection therapy and that EMG and nerve conduction studies showed no CTS on the right. (<u>Id.</u>) Furthermore, x-rays of Claimant's shoulder were normal, as were ranges of motion and strength; her sensation was intact; and her gait was normal. (<u>Id.</u>) The Commissioner also

13

notes that two state agency physicians opined that Claimant was capable of performing a limited range of medium work. (<u>Id.</u>) Regarding her mental impairments, Dr. Hamm opined that she was not disabled and could work around others, and assessed a GAF of 65. (<u>Id.</u> at 12-13.) In view of the medical evidence of record, the Commissioner asserts that the ALJ properly found that Claimant's subjective complaints were not fully credible. (<u>Id.</u> at 13.) For these reasons, the Commissioner contends that the ALJ's pain and credibility assessment is supported by substantial evidence. (<u>Id.</u>)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p; <u>See also</u>, <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  <u>Id.</u> at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." <u>Mickles v. Shalala</u>, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. <u>Hyatt v. Sullivan</u>, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2006).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . .  Factors relevant to your symptoms, such as pain,

14

which we will consider include:

> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2006).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations.  A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless,  Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 20-21.) The ALJ found, at the first step of the

analysis, that Claimant's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms." (Tr. at 23.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 23-28.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 23.)

The Court finds that the ALJ properly considered the factors under 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4), in evaluating Claimant's pain and credibility, despite Claimant's assertion to the contrary. The ALJ summarized Claimant's testimony in his decision and acknowledged Claimant's mental and physical impairments, including their nature and location. (Tr. at 21-23.) He also noted Claimant's reported limitations from these impairments. (Id.)

The ALJ acknowledged Claimant's reported activities of daily living. (Tr. at 21-22.) He noted Claimant's testimony that she dressed her daughter, took her medications, prepared her daughters breakfast, laid down to rest, read her prescriptions, used the microwave, assisted with the laundry, and shopped for small items. (Id.) He also noted that she attended Bible School with her daughter and went to church. (Tr. at 22.)

Despite her complaints of debilitating back, neck, shoulder, and wrist pain, the ALJ noted that Claimant's treatment generally was conservative. (Tr. at 27.) He also noted that regarding Claimant's mental impairments, Claimant consistently reported that she could not be around other people, but her treating psychiatrist, Dr. Hamm, thought otherwise. (Id.) Finally, the ALJ noted Claimant's "denied binge drinking and using marijuana since her teens," the focus of Claimant's challenge to the ALJ's credibility analysis. In this regard, the ALJ stated as follows:

At the hearing, the claimant denied binge drinking and using marijuana since her teens,

17

but while she was in the hospital following her December 22, 2004 accident, she admitted to the doctors that she did use marijuana and had been having a history of frequent alcohol binges (Exhibit 13F/1 & 5). Consequently, the undersigned cannot find the claimant totally credible.

(Tr. at 27.)

The medical evidence reveals that on April 17, 2001, Claimant reported to Dr. Joseph E. Grady II, that she rarely drank alcohol and denied illicit drug use. (Tr. at 203.) On June 7, 2004, Claimant reported to Dr. Eitel on psychiatric evaluation that she occasionally drank beer and marijuana when younger. (Tr. at 222.) On November 19, 2004, Dr. Hamm's records reflected that Claimant drank two to four servings of alcohol on the weekends, and that at one point in her teens until she was approximately 20 years of age, she used marijuana regularly and tried cocaine and LSD, but had not used illegal drugs since that time. (Tr. at 411.) On December 22, 2004, Dr. Alan Lee's medical notes reflect that Claimant drank alcohol three times each week and smoked marijuana on occasion. (Tr. at 256.) Also on December 22, 2004, Dr. Craig Bookout reported that Claimant did use some marijuana, denied other drug use, and had a history of frequent alcohol binges. (Tr. at 252.)

Claimant asserts that the statements made by Drs. Lee and Bookout were not accurate and that the ALJ improperly relied on them in finding her not entirely credible. Based on the medical evidence as a whole, it appears that Claimant used marijuana on a regular basis when she was younger but had not used illicit drugs since that time. The evidence regarding alcohol consumption however, is inconsistent. Dr. Eitel reports occasional consumption, while Dr. Hamm reports two to four servings of alcohol on the weekends and Dr. Lee indicates alcohol three times each week. Claimant testified at the administrative hearing that she drank two beers every two weeks. (Tr. at 514.) The undersigned finds that the inconsistent statements to various medical providers supports the ALJ's finding that Claimant is not entirely credible. Nevertheless, even discounting Claimant's statements regarding

18

alcohol consumption and drug use, the vast inconsistencies between the medical evidence and Claimant's subjective complaints on other grounds supports the ALJ's finding that Claimant was not entirely credible. Accordingly, the undersigned finds that the ALJ's credibility assessment is supported by substantial evidence.

3. <u>RFC Assessment</u>.

Next, Claimant argues that the ALJ erred in assessing her residual functional capacity when he failed to account for the combined effect of her physical and mental impairments and the side effects of her medications, improperly relied on the assessments of the state agency medical sources, and improperly rejected the opinion of Dr. Sams that Claimant was disabled. (Document No. 12 at 51-52.) The Commissioner asserts that the ALJ specifically discussed each of Claimant's alleged impairments and considered all functional limitations from her impairments in formulating his RFC finding and hypothetical question to the VE. (Document No. 15 at 13.) Regarding medication side effects, the Commissioner asserts that the record does not evidence any side effects on a long-term basis after her medications were adjusted, and therefore, the ALJ was not required to account for any such side effects in his RFC assessment. (<u>Id.</u> at 14.) The Commissioner notes that Claimant has not identified any specific side effect. (<u>Id.</u> at 14-15.)

Regarding the opinion evidence, the Commissioner asserts that the ALJ properly rejected Dr. Sams' February 24, 2005, opinion that Claimant was disabled because it was inconsistent with the other evidence of record, which did not demonstrate any disabling functional limitations. (Document No. 15 at 15.) Regarding mental impairments, the ALJ properly noted that Dr. Sams was a family doctor and not a mental health specialist. (<u>Id.</u>) Furthermore, the Commissioner notes that her opinion was inconsistent with Claimant's treating psychiatrist's opinion. (<u>Id.</u>) Regarding musculoskeletal impairments, the ALJ indicated that Claimant's generally conservative treatment did not support Dr.

19

Sams' opinion that Claimant was disabled. (Id. at 15-16.) The Commissioner notes that Claimant

responded to injection therapy and EMG and nerve conduction studies were normal on the right on

October 1, 2004. (Id. at 16.) Dr. Jenkins reported that Claimant had normal right shoulder x-rays and

Dr. Collins indicated normal strength, sensation, and gait findings. (Id.) Accordingly, the

Commissioner asserts that the state agency physicians' opinions were entitled to more weight than

that of Claimant's treating physician, Dr. Sams, and therefore, Claimant's argument is without merit.

(Id.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's

residual functional capacity (RFC) for substantial gainful activity. "RFC represents the most that an

individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61

Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the

claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§

404.1545(a), 416.945(a) (2004). "This assessment of your remaining capacity for work is not a

decision on whether you are disabled, but is used as the basis for determining the particular types of

work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual

functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and

mental activity that the claimant can perform in a work setting, after giving appropriate consideration

to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§

404.1527(e)(2), 416.927(e)(2) (2004).

> In determining what a claimant can do despite his limitations, the SSA must consider
> the entire record, including all relevant medical and nonmedical evidence, such as a
> claimant's own statement of what he or she is able or unable to do. That is, the SSA
> need not accept only physicians' opinions. In fact, if conflicting medical evidence is
> present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2004). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner.  Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2004). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination

21

of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2004). The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2004). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's

22

medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

As previously noted, the ALJ thoroughly considered and summarized the medical evidence of record. (Tr. at 18-19, 21-28.) After consideration of all the evidence, the ALJ determined that Claimant retained the RFC for light work which involved no climbing ladders, ropes, or scaffolds, and would allow for occasional climbing stairs or ramps, balancing, stooping, kneeling, crouching, and crawling; occasionally pushing and pulling and overhead reaching with the right upper extremity; no repetitive use of the wrists; and frequent, but not constant, handling and fingering. (Tr. at 20.)

A. Combination of Impairments.

Claimant first argues that the ALJ erred in not considering Claimant's physical and mental impairments in combination. (Document No. 12 at 51.) The Commissioner asserts that this argument is without merit. (Document No. 15 at 13-14.)

The Social Security Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. §§ 404.1523; 416.923 (2006). When there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in

23

isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983.)

The Claimant fails to point to any specific portion of the record or any specific evidence demonstrating that the ALJ failed to consider the severity of her impairments in combination and "fractionalized" the impairments. The ALJ specifically noted the requirements of the Regulations with regard to considering impairments in combination. (Tr. at 16-17, 19.) The ALJ then discussed Claimant's impairments, finding that a combination of Claimant's back disorder, right shoulder pain, and a history of carpal tunnel syndrome, were severe impairments. (Tr. at 18.) The ALJ specifically found, however, that the record did not reflect that Claimant had "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Tr. at 19.) Further, the ALJ considered and accounted for Claimant's various impairments in determining Claimant's residual functional capacity, limiting her to light work, with postural limitations as discussed above. (Tr. at 20.) Additionally, the ALJ noted that he had considered all of the evidence of record in making his decision. (Tr. at 16.) In his decision, the ALJ discussed each of Claimant's impairments individually, but concluded that their combined effects were not disabling. Upon review of the evidence of record and the ALJ's decision, the undersigned finds that the ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and his conclusions are supported by substantial evidence. Accordingly, the undersigned finds that Claimant's argument is therefore, without merit.

B. Side Effects of Medications.

Claimant next argues that the ALJ failed to consider the side effects from Claimant's prescription medications. (Document No. 12 at 51-52.) The Commissioner asserts that Claimant's argument is without merit. (Document No. 15 at 15.)

At the administrative hearing, Claimant testified that she experienced fatigue, grogginess, and difficulty concentrating from the muscle relaxers that she was prescribed, and that Topamax caused nausea and diarrhea. (Tr. at 516.) On a form Function Report - Adult, dated January 2, 2005, Claimant reported that she was unable to drive when she took prescription medications for pain and muscle relaxers. (Tr. at 98.) On a Personal Pain Questionnaire dated December 14, 2004, she also reported that her Vicodin, Trazadone, Soma, and Extra-Strength Tylenol resulted in concentration and memory difficulties and made her feel tired and sleepy. (Tr. at 84.) She further indicated that Bextra and Vicodin caused concentration and memory difficulties. (Tr. at 85.)

In his decision, the ALJ noted the appropriate regulations of 20 C.F.R. § 404.1529 and SSR 96-7p with respect to considering Claimant's RFC and noted that he considered all the evidence of record. (Tr. at 16, 20-21.) The ALJ however, did not mention or discuss specifically Claimant's alleged side effects from her medications. The undersigned acknowledges that Clamant's medications may cause the alleged side effects, and notes that Claimant's medications were changed by Dr. Sams on at least one occasion. Nevertheless, the medical evidence contains minimal reports from Claimant that specific medications caused the alleged side effects and that she requested different medications. Moreover, despite Claimant's allegations of fatigue, grogginess, nausea, diarrhea, and difficulties with concentration and memory, the record does not contain any functional limitations resulting from the side effects of her medications. In fact, the progress notes from Willow Ridge consistently indicated that Claimant's memory was normal and that her thoughts were normal and goal directed.

25

(Tr. at 398-414.) Without having established any significant functional limitations resulting from any medications she took, the undersigned finds that any error the ALJ may have committed in not addressing explicitly the side effects from Claimant's medications is harmless. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (*citing* Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002)("Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations.")). Claimant did not address specifically the testified to side effects to her physicians and did not address in her brief how she was limited functionally by the alleged side effects. Accordingly, the undersigned finds her argument to be without merit.

    C. Opinion Evidence.

    Finally, Claimant argues that the ALJ erred in relying on the opinions of the state agency medical sources and discounting the opinion of her treating physician, Dr. Sams. (Document No. 12 at 51-52.) The Commissioner asserts that Claimant's argument is without merit. (Document No. 15 at 15-16.)

    As discussed above, Dr. Sams opined on February 24, 2005, that Claimant was disabled on the basis of severe emotional labile disorder, major depressive disorder, and her musculoskeletal problems. (Tr. at 291.) Regarding Claimant's mental impairments, the Commissioner aptly points out that Dr. Sams was not a mental health specialist. (Document No. 15 at 15.) As discussed above, the ALJ properly relied on the opinions of Claimant's treating psychiatrist, Dr. Hamm, that Claimant was not disabled from a psychiatric viewpoint, and on the opinions of the supporting state agency medical sources, Drs. Smith and Lilly. (Tr. at 18-19.) Regarding Claimant's physical impairments, the medical evidence indicated that Claimant's CTS responded to injection therapy from Dr. Torre; that x-rays of her right shoulder were normal and that she had normal strength, sensation, and range of

26

motion of the shoulder; and that Dr. Collins observed normal gait, sensation, and strength and noted that sleep problems and possible restless leg syndrome aggravated her pain levels. The state agency medical sources, Drs. Lambrechts and Reddy, opined that Claimant was capable of performing a limited range of light work, which the ALJ found consistent with the overall evidentiary record. (Tr. at 27-28.) The ALJ accommodated Claimant's back and shoulder impairments by reducing her RFC to light work with postural restrictions. (Tr. at 28.) He further accommodated her CTS and upper extremity complaints by restricting her pushing and pulling activities, overhead reaching, wrist activities, and handling and fingering activities. (Id.) Accordingly, the undersigned finds that the ALJ's decision to give greater weight to the opinions of the state agency medical sources than to Claimant's treating physician, Dr. Sams, is supported by substantial evidence of record.

4. <u>VE Testimony</u>.

Claimant also argues that the ALJ erred in posing hypothetical questions to the VE when he failed to include any mental limitations and limitations due to side effects of Claimant's medications. (Document No. 12 at 52-53.) Claimant further argues that the ALJ failed to credit the VE's testimony that Claimant could not perform any substantial gainful activity if she were unable to sustain a full-time work schedule. (Id.)

The Commissioner asserts that the ALJ accounted for all of Claimant's functional limitations that were supported by the objective medical evidence. (Document No. 15 at 17.) The Commissioner notes that Claimant did not have any functional limitations that significantly limited her ability to perform basic mental work activities, and therefore, the ALJ properly excluded any such limitations from his hypothetical questions. (Id. at 18.) Furthermore, the Commissioner asserts that the ALJ was not required to include any vocational limitations resulting from Claimant's alleged side effects from her medications. (Id.) This is because there was no evidence that she experienced "any significant,

27

long-term side effects from her various medications." (Id.) Finally, the Commissioner asserts that because the ALJ found Claimant's subjective complaints of debilitating limitations incredible, he was not required to credit the VE's response that Claimant could not perform any substantial gainful activity if she were unable to sustain a full-time work schedule. (Id.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

In the ALJ's hypothetical questions to the VE, he included all of Claimant's impairments that were supported by the record. (Tr. at 391-97.) The ALJ first asked whether a person who was limited to performing light exertional level work with occasional postural limitations; an inability to climb ladders, ropes, or scaffolds; unlimited ability to push or pull with the exception of the lifting and carrying restrictions, could perform any work. (Tr. at 553.) In response to the ALJ's hypothetical, the VE responded that such person could perform Claimant's past relevant work as a paralegal, legal assistant, secretary, and receptionist. (Tr. at 554.) The ALJ then asked whether any of the jobs identified would be altered if he changed the pushing and pulling limitation to occasional only, with the normal CTS restrictions, that being no repetitive use of the hands. (Id.) The VE responded that

28

such a limitation would allow an individual to perform Claimant's past relevant work as a paralegal, social service aide, sewing machine operator, and receptionist. (Id.) Finally, the ALJ asked whether any of the jobs identified would be altered with the inclusion of frequent but not constant handling and fingering. (Tr. at 556.) The VE responded that such an individual could perform all of Claimant's past relevant work except for the sewing machine operator job. (Id.) In response to a subsequent question initially posed by Claimant's attorney, but later re-styled by the ALJ, the VE responded that there would be no jobs available for an individual unable to meet the basic mental demands of competitive work on a sustained basis. (Tr. at 558-59.)

As discussed above, the medical evidence failed to establish any significant functional limitations resulting from Claimant's mental impairments, and therefore, the undersigned finds that the ALJ was not required to reflect any mental limitations in his hypothetical questions to the VE. Furthermore, Claimant failed to demonstrate any significant limitations resulting from side effects from her prescription medications. Consequently, the undersigned finds that the ALJ was not required to include any limitations in his hypothetical questions to the VE that reflected side effects from medications. As the Commissioner notes, the ALJ determined that Claimant's subjective complaints were not credible in their entirety. Consequently, the ALJ was not required to credit the VE's response to the hypothetical question based on Claimant's unsupported subjective complaints regarding her inability to meet the basic mental demands of competitive work on a sustained basis. Accordingly, the undersigned finds that the ALJ's RFC assessment in these regards is supported by substantial evidence of record and that Claimant's arguments are without merit.

5. Medical Expert Testimony.

Finally, Claimant argues that the ALJ erred in not having a medical expert present at the administrative hearing pursuant to Grimmett v. Heckler, 607 F.Supp. 502 (S.D. W.Va. 1985).

29

(Document No. 12 at 57-58.) Claimant asserts that a medical expert could have assisted the ALJ and the VE with the consideration of Claimant's impairments, the side effects from her medications, and the limitations imposed on her from the impairments and medications. (Id. at 57.) The Commissioner asserts that unlike the ALJ in Grimmett, the ALJ in the instant case "cited to ample evidence in support of his conclusion that [Claimant] did not have any disabling physical or mental limitations." (Document No. 15 at 19.)

The decision to call a medical expert at the administrative hearing is left to the discretion of the ALJ. See 20 C.F.R. §§ 416.927(f)(2)(iii); 404.1527(f)(2)(iii); 404.1529(b) (2006); see also Siedlecki v. Apfel, 46 F. Supp.2d 729, 732 (N.D. Ohio 1999). As the Court stated in Siedlecki, the Regulations give the ALJ discretion whether to call on a medical advisor, and the ALJ is responsible for reviewing the evidence and resolving conflicts in the medical evidence. 46 F.Supp.2d at 732.

As the Commissioner notes, in Grimmett, this District Court found that the ALJ improperly substituted his lay medical opinion for that of a professional opinion when he discredited the psychiatric and psychological evidence in the record in the absence of any contradictory medical evidence to support his position. Grimmett, 607 F.Supp. at 503. In the instant case, the medical record was sufficient for the ALJ to make his decision without the testimony of a medical expert. The record contains medical evidence in the form of treatment records from providers, as well as opinion evidence from state agency medical sources who opined that Claimant's impairments neither  met, medically equaled, nor functionally equaled a listed impairment, nor resulted in any disabling physical or mental limitations. The Regulations note that these providers are experts in the field of disability determination. See 20 C.F.R. § 416.927(f)(2)(I) (2006). Despite Claimant's arguments, an ALJ is not required to have a medical expert present to testify at a hearing. The Regulations provide that ALJs "*may* also ask for and consider opinions from medical experts on the nature and severity

of your impairment(s) and on whether your impairment(s)  equals the requirements of any impairment listed in appendix 1 . . . ." 20 C.F.R. § 404.1527(f)(2)(iii) (2006) (emphasis added). Based on the foregoing, the undersigned finds that the substantial evidence of record supports the ALJ's decision that Claimant was not disabled, and therefore, he was not required to obtain testimony from a medical expert.

Upon review of the evidence of record and the ALJ's decision, the undersigned finds that the ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and his conclusions are supported by substantial evidence. The undersigned further finds that Claimant's arguments therefore, are without merit.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 15.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: August 31, 2009.

R. Clarke VanDervort
United States Magistrate Judge

32